**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LASSANA MAGASSA,

               Plaintiff,

v.

TRANSPORATION SECURITY
ADMINISTRATION,

               Defendant.

Civ. Action No. 19-01953 (EGS)

**<u>MEMORANDUM OPINION</u>**

Plaintiff Lassana Magassa ("Mr. Magassa" or "Plaintiff") brings this lawsuit against Defendant Transportation Security Administration ("TSA") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Complaint, ECF No. 1. Mr. Magassa's lawsuit arises from a September 18, 2017 FOIA request for records regarding the revocation of his security and aviation-worker privileges, as well as other records relating to travel difficulties he has experienced. *See id* ¶ 6. Mr. Magassa alleges that TSA has made an inadequate search for, and disclosure of, responsive records. *Id.* ¶ 21.

Pending before the Court are TSA's Motion for Summary Judgment, *see* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Defs.' MSJ"), ECF No. 9-2; and Mr. Magassa's Cross Motion for Summary Judgment, *see* Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s XMSJ"), ECF No. 11-2.

1

Upon careful consideration of the motions, responses, and the replies thereto, the applicable law and regulations, the entire record and the materials cited therein, the Court **GRANTS** TSA's Motion for Summary Judgment, *see* ECF No. 9; and **DENIES** Mr. Magassa's Motion for Summary Judgment, *see* ECF No. 11.

## I.   Background

### A.   Factual Background

The following facts are undisputed. In 2017, Mr. Magassa submitted a FOIA request to the TSA seeking records relating to: (1) additional screening of him by TSA; (2) placement or potential placement of him on the Terrorist Watch List; (3) placement or potential placement of him on the Selectee List; (4) TSA questioning of him at five specific airports during five specified date ranges; and (5) records concerning him shared with or received from the Federal Bureau of Investigation or U.S. Customs and Border Patrol. Declaration of Terri Miller (Jan. 15, 2020) ("Miller Decl."), ECF No. 9-3 ¶¶ 4-12. TSA located 231 pages of records responsive to Mr. Magassa's request. *Id.* ¶ 28. TSA determined that 204 of the pages in whole or in part contained Sensitive Security Information ("SSI") and invoked FOIA Exemption 3 to justify those withholdings. *Id.* TSA further invoked FOIA Exemption 6 to redact information on three pages *Id.* On or about May 8, 2018, TSA ultimately released 49 pages of responsive records, releasing 26 pages in full and 23

pages in part. *Id.* ¶ 29. TSA also provided a *Glomar* response, stating that it "could neither confirm nor deny the existence of records that, by their very existence or nonexistence, would indicate Plaintiff's status on a federal watch list" and explaining that "neither confirming nor denying the existence of records indicating placement on a federal watchlist protects the operational counterterrorism and intelligence collection objectives of the Federal government and the personal safety of those involved in counterterrorism investigations." *Id.*

On July 6, 2018, Mr. Magassa timely submitted a written appeal of the TSA's response to his FOIA request. Exhibit I, ECF No. 9-3. The appeal stated that, along with wrongfully redacting information and citing exemptions which do not protect the redacted information from disclosure, TSA also withheld documents in its possession in their entirety and did not properly address those documents and any corresponding exemptions in order to justify withholding them altogether. *Id.* The appeal also challenged the adequacy of TSA's search for responsive records, and noted that "the undersigned counsel previously received numerous TSA documents through other administrative avenues that were not provided in this response, including but not limited to the determination that Mr. Magassa

does not meet the eligibility requirements to hold airport-approved and/or airport-issued media." *Id.*

On September 5, 2018, TSA responded to Mr. Magassa's Appeal and affirmed its withholdings, redactions, and the use of FOIA Exemptions 3 and 6. Exhibit J, ECF No. 9-3. TSA articulated its position that records relating to Mr. Magassa's credentials were not within the scope of his FOIA request. *Id.*  TSA's response also stated that the contents of the letter constituted the Agency's final decision, and that Mr. Magassa could seek judicial review. *Id.* Mr. Magassa subsequently filed this lawsuit on June 28, 2019.

**B.   Procedural Background**

On January 15, 2020, TSA filed a Motion for Summary Judgment, *see* Def.'s MSJ., ECF No. 9-2; to which Mr. Magassa responded, *see* Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot for Summ. J. ("Pl.'s Opp'n"), ECF No. 10. Mr. Magassa also filed a Cross Motion for Summary Judgment. *See* Pl.'s XMSJ., ECF No. 11-2. TSA then filed a joint opposition and reply on May 7, 2020. *See* Def.'s Comb. Reply in Supp. of Mot. for Summ. J and Opp'n to Pl.'s XMSJ for Summ. J. ("Def.'s Opp'n"), ECF No. 15. Mr. Magassa replied on May 21, 2020. *See* Pl.'s Reply, ECF No. 18. The motions are ripe and ready for adjudication.

## II.  Legal Standard

### A.  Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment motions must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (quotation marks omitted).

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment turns on "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party"–and thus a "genuine" dispute over a material fact exists–then summary judgment is not available. *Id.* at 248.

For purposes of summary judgment, materiality is determined by the substantive law of the action. *Id.* Accordingly, the substantive law identifies "which facts are critical and which facts are irrelevant," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Similarly, the applicable substantive evidentiary standards of the action guide "whether a given factual dispute requires submission to a jury." *Id.* at 255. The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### B. FOIA

FOIA is based on the recognition that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of

public scrutiny," and it favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting *Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). FOIA cases are usually resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency has the burden of justifying its response to the FOIA request it received, and the court reviews its response *de novo*. 5 U.S.C. § 552(a)(4)(B).

## C.   Adequate Search

To prevail on summary judgment in a FOIA case, the agency must show that it conducted an adequate search for records responsive to the plaintiff's FOIA request. *See Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). To make a *prima facie* showing of adequacy, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (adequacy depends on the "appropriateness of the methods used" rather than the "fruits of the search").

It may do so by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search

7

performed, and averring that all files likely to contain
responsive materials (if such records exist) were searched."
*Reporters Comm.*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at
68). Such affidavits "are accorded a presumption of good faith,
which cannot be rebutted by 'purely speculative claims about the
existence and discoverability of other documents.'" *SafeCard
Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)
(quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771
(D.C. Cir. 1981)). However, "[a]t a bare minimum, the agency's
affidavits need to specify 'what records were searched, by whom,
and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d
26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552
(D.C. Cir. 1994)).

   "The agency fails to meet this burden such that summary
judgment is inappropriate when the agency fails to set forth the
search terms and the type of search performed with specificity
or otherwise provides 'no information about the search
strategies of the [agency] components charged with responding to
[a] FOIA request' and 'no indication of what each [component's]
search specifically yielded.'" *Otero v. DOJ*, 292 F. Supp. 3d
245, 251 (D.D.C. 2018) (quoting *Reporters Comm.*, 877 F.3d at
402).

### III. Analysis

TSA argues that Mr. Magassa failed to administratively exhaust certain issues, and judicial review is therefore inappropriate. *See* Def.'s MSJ, ECF No. 9-2 at 9. TSA asserts that it properly determined that Mr. Magassa's initial FOIA requests were insufficiently specific to enable TSA to conduct a reasonable search, and also that it properly excluded records related to his aviation worker's credential as outside the scope of his request. *Id.* at 11, 15. TSA adds that it conducted a reasonable search for the requested records, and withheld only exempt records. *Id.* at 15, 20. Finally, TSA argues that it released all reasonably segregable records, and should therefore be granted summary judgment. *Id.* at 30.

Mr. Magassa responds that neither did he fail to exhaust all remedies, nor is this necessary. *See* Pl.'s XMSJ, ECF No. 11-2 at 18. He contends that summary judgment in TSA's favor is unwarranted because TSA did not make a reasonable, good-faith effort in its search. *Id.* at 12. He adds that he is entitled to injunctive, declaratory, and mandamus relief. *See id.* at 5. Given the overlapping nature of the issues raised by both parties, the Court considers their arguments together for each issue presented.

### A.   Mr. Magassa Has Exhausted His Administrative Remedies

TSA does not dispute that Mr. Magassa filed an administrative appeal. *See* Def.'s MSJ, ECF No. 9-2 at 10. Instead, TSA argues that Mr. Magassa's appeal "did not challenge the agency's *Glomar* response, the adequacy of TSA's searches, or TSA's determinations that Plaintiff's requests of September 18, 2017, and October 13, 2017, did not comply with 6 C.F.R. § 5.3(b) and were not proper FOIA requests," and therefore "TSA has not had the opportunity to exercise its discretion and expertise on these matters." *Id.* at 11. Mr. Magassa responds that his appeal included language that "suffices to appeal the entirety of the TSA's response, as recognized by courts in this Circuit." Pl.'s Opp'n, ECF No. 10 at 18 (citing *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007)). He adds that even if he had failed to appeal any portion of the TSA's FOIA response, this would not provide a basis to grant TSA's Motion. *Id.* The Court agrees with Mr. Magassa.

Exhaustion of administrative remedies is "a mandatory prerequisite" to a lawsuit under FOIA. *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (*per curiam*) (internal citation omitted). To exhaust administrative remedies, a FOIA requestor must follow relevant agency regulations on administrative appeal. *See, e.g.*, *DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015) (observing that to allow requester to "pursue

judicial review without benefit of prior [agency] consideration [on administrative appeal] would undercut the purposes of exhaustion" (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003))).

With respect to TSA's assertions as to the limitations of Mr. Magassa's appeal, the Court is cognizant that Mr. Magassa's administrative appeal stated that "[w]e further appeal the agency's lack of production in response to Mr. Magassa's request overall." ECF No. 9-3 at 46. Mr. Magassa also asserted that TSA "withheld numerous documents in its possession in their entirety and did not properly address those documents and their corresponding exemptions in order to justify withholding them altogether." *Id.* The Court construes these statements as sufficiently broad to challenge the entirety of TSA's response. TSA provides no authority establishing that Mr. Magassa must challenge each component of TSA's responses individually. *See generally* Def.'s MSJ, ECF No. 9-2. The Court's conclusion is bolstered by TSA's September 5, 2018 letter stating that the letter constituted the Agency's final decision, and that Mr. Magassa could seek judicial review. Exhibit J, ECF No. 9-3. It is inconsistent for TSA to direct Mr. Magassa to seek judicial review of his appeal, without clarifying he may further appeal

other issues, and then assert before this Court that he has not exhausted his administrative remedies.

Moreover, as TSA recognizes, "the D.C. Circuit has held that exhaustion of administrative remedies in FOIA case is a jurisprudential doctrine rather than a jurisdictional prerequisite." Def.'s MSJ, ECF No. 9-2 at 11 (citing *Hildalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)); *see also Wilbur*, 355 F.3d at 677 ("[E]xhaustion of a FOIA request is not jurisdictional because the FOIA does not unequivocally make it so[.]") (internal citation and quotation marks omitted). The Court concludes that Mr. Magassa has exhausted his administrative remedies.

**B. TSA Conducted a Reasonable Search for Responsive Records**

TSA argues that its "detailed declaration from its FOIA Officer demonstrates that it met its FOIA obligation by searching all locations likely to contain responsive records." Def.'s MSJ, ECF No. 9-2 at 15. It states that it searched the only locations likely to yield records responsive to Mr. Magassa's final amended request, which concerned, in part, TSA questioning that Mr. Magassa allegedly underwent at five specific airports. *See id.* at 17. Mr. Magassa broadly counters that TSA failed to fully search for responsive documents and did not make a good faith effort in its searches, but he does not specifically present any challenges to TSA's methodology. *See*

12

Pl.'s Opp'n, ECF No. 10 at 9, 12. The Court concludes that TSA's search was adequate.

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "In the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice . . . ." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "'[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'" *Jennings v. Dep't of Justice*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde*, 315 F.3d at 315.

Before turning to the merits of the argument, two threshold matters are necessary to address. First, the Court is cognizant that the scope of TSA's search properly excluded records related to Mr. Magassa's aviation worker credential. Mr. Magassa suggests that his October 13, 2017 FOIA request included records related to his aviation worker credential. Pl.'s Opp'n, ECF No. 10 at 7. However, none of Mr. Magassa's three requests indicated that the nature of one of his contacts with TSA was as an individual holding a credential, or that any of the records he

13

sought were related to his aviation worker credential. *See* Exs. A, C, E, ECF No. 9-3. "[I]t is the requester's responsibility to frame requests with sufficient particularity." *Hall & Assoc. v. EPA*, 83 F. Supp. 3d 92, 101 (D.D.C. 2015). TSA therefore did not err in determining that records related to Mr. Magassa's aviation worker credential were outside the scope of his request. Mr. Magassa may submit another FOIA request for his aviation worker credentials specifically, and indeed, he has already done so. *See* Def.'s Reply, ECF No. 14 at 5.[1] Second, the Court finds TSA's critique of Mr. Magassa's initial FOIA requests to be irrelevant. *See* Def.'s MSJ, ECF No. 9-2 at 11. Mr. Magassa's first two requests were, at TSA's behest, clarified into a final request, which provides the basis for this action. The Court does not agree that "[s]ummary judgment for TSA on Plaintiff's initial requests of September 18, 2017, and October 13, 2017, is proper," because it is the final version of the request that is relevant. *Id.*

Turning to the adequacy of TSA's search for the final request, TSA explains through affidavits where it searched for

---

[1] TSA also brings to the Court's attention that Mr. Magassa's airline worker credential has been reinstated and he was able to gain employment with an airline (in a separate lawsuit he filed). *See Magassa v. Wolf*, Case No. 2:19-cv-02036-RSM (W.D. Wash. 2019); Compl., ECF No. 1 ¶¶ 144-145.

records, why it searched there, who led the search process, why
those specific individuals were chosen to lead the search
process, and what the search process entailed. *See* Def.'s MSJ,
ECF No. 9-2 at 15-20; *see generally* Miller Decl., ECF No. 9-3.
Mr. Magassa does not mount any specific challenges to this
methodology. *See generally* Pl.'s Opp'n, ECF No. 10. The Court
concludes that TSA has established the reasonableness of its
search by providing "reasonably detailed, nonconclusory
affidavits describing its efforts." *Baker*, 473 F.3d at 318.
Accordingly, the Court **GRANTS** TSA's Motion for Summary Judgment
as to the adequacy of the search, and **DENIES** Mr. Magassa's
request for an order requiring TSA to demonstrate that it
employed search methods reasonably likely to lead to the
discovery of responsive records, and for an order for TSA to
conduct an adequate search.

   C.   **TSA Withheld Only Exempt Information**

      1. **TSA's Withholdings Under Exemption 3 Were Proper**

   TSA invokes FOIA Exemption 3 to withhold the information it
has designated as SSI from disclosure, *see* Def.'s MSJ, ECF No.
9-2 at 20; pursuant to 49 U.S.C. § 114(r)(1)(C), on the grounds
that "public release of the information . . . could enable
terrorists to evade or circumvent transportation security
screening procedures," Declaration of Douglas E. Blair ("Blair
Decl."), ECF No. 9-4 ¶ 13. Exemption 3 allows an agency to

withhold or redact records that are "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Pursuant to 49 U.S.C. § 114(r), TSA is required to implement regulations prohibiting disclosure of information "[n]otwithstanding section 552 of title 5 [i.e., FOIA]" provided TSA's Administrator "decides that disclosing the information would (A) be an unwarranted invasion of personal privacy; (B) reveal a trade secret or privileged or confidential commercial or financial information; or (C) be detrimental to the security of transportation." 49 U.S.C. § 114(r). Accordingly, TSA promulgated implementing regulations that expressly prohibit the disclosure of certain categories of SSI. *See generally* 49 C.F.R. part 1520.

The Supreme Court has stated that Section 114(r)(1) allows the TSA to deny FOIA requests and that the prohibitions set forth in Section 114(r)(1) "currently override FOIA." *DHS v. MacLean*, 574 U.S. 383, 135 S. Ct. 913, 923 (2015). As this Court has previously concluded, and as persuasive authority holds, Section 114(r) qualifies as an Exemption 3 withholding statute.

16

*Skurow v. U.S. Dept. of Homeland Sec.*, 892 F. Supp. 2d 319, 329 (D.D.C. 2012); *see also Elec. Privacy Info. Ctr. v. DHS*, 928 F. Supp. 2d 139, 146 (D.D.C. 2013), *appeal dismissed* (Jan. 21, 2014) (concluding Section 114(r) qualifies as an Exemption 3 withholding statute); *Tooley v. Bush*, No. CIV.A. 06-306 (CKK), 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006), *aff'd on other grounds on rehearing*, 586 F.3d 1006 (D.C. Cir. 2009) (same); *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 109-10 (D.D.C. 2005) (same).

Mr. Magassa does not challenge whether Section 114(r) qualifies as an exemption holding statute. *See generally* Pl.'s Opp'n, ECF No. 10. Nor does he dispute that the Court lacks jurisdiction to review TSA's decision to designate certain material as SSI. *See generally id.* Courts of Appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside" the final orders issued by TSA referenced in § 46110(a), including SSI designations made pursuant to § 114(r). 49 U.S.C. § 46110(c). As such, district courts, including those adjudicating FOIA cases, may not review determinations of TSA to designate material as SSI. *Skurow,* 892 F. Supp. 2d at 331.

Accordingly, the scope of this Court's review is to determine whether the material withheld, as described by TSA, fits within the scope of Section 114(r). *Morley v. CIA,* 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Ret. R.R. Workers*

17

*v.U.S. R.R. Ret. Bd.,* 830 F.2d 331, 336 (D.C. Cir. 1987)

("'[T]he sole issue for decision is the existence of a relevant

statute and the inclusion of the withheld material within the

statute's coverage.'")); *James Madison Project v. CIA,* 607 F.

Supp. 2d 109, 126 (D.D.C.2009).

In describing the withheld material, TSA states that

> the 182 pages withheld in full cover material
> concerning procedures for screening of persons
> and their property, including selection
> criteria and any comments, instructions, and
> implementing guidance pertaining thereto, and
> information that may be used to determine
> Plaintiff's status on a watch list utilized by
> TSA for passenger pre-board screening (i.e.,
> whether Plaintiff was or was not on such a
> list), which identifies information and
> sources of information used by TSA's automated
> passenger prescreening system, the Secure
> Flight Program.

Blair Decl., ECF No. 9-4 ¶ 12(a). TSA states that this

information is SSI pursuant to 49 C.F.R. §§ 1520.5(b)(9)(i) and

(ii) "because it is used by a passenger screening system and/or

concerns screening procedures, including selection criteria and

any comments, instructions, and implementing guidance pertaining

thereto." *Id.*

TSA further describes the redacted material as follows:

> The redactions to the 22 pages withheld in
> part cover material concerning the type of
> suggested letter to be issued in response to
> Plaintiff's redress inquiry, information
> related to components that conducted analyses
> related to Plaintiff's redress inquiry, and

> other information that may also be used to
> determine Plaintiff's status on a watch list
> utilized by TSA for passenger pre-board
> screening (i.e. whether Plaintiff was or was
> not on such a list). This material identifies
> information and sources of information used by
> TSA's automated passenger prescreening
> system, the Secure Flight Program.

*Id.* ¶ 12(b). TSA states that this information is SSI pursuant to
its implementing regulations at 49 C.F.R. § 1520.5(b)(9)(ii)
"because it is used by a passenger screening system." *Id.*

Mr. Magassa argues that TSA has merely recited statutory
standards and relied on broad categories, thereby failing in its
obligation to provide a relatively detailed justification
explanation for its Exemption 3 withholdings. *See* Pl.'s XMSJ,
ECF No. 11-2 at 14-15, 18; Pl.'s Opp'n, ECF No. 10 at 15.
The Court disagrees. Again, the scope of the Court's review is
limited to whether the material withheld, as described by TSA,
fits within the scope of Section 114(r). With regard to the 182
pages withheld in full, TSA provided a detailed description of
the withheld material. *See supra*. In summary, it consists of
procedures and implementing guidance for screening persons and
property, information used to determine whether Mr. Magassa is
on a watch list, and the sources of information by the Secure
Flight Program. The description fits squarely within the scope
of Section 114(r) because release of such procedures,
implementing regulations, and the specified information would

19

"be detrimental to the security of transportation." 49 U.S.C. §
114(r)(C). Furthermore, the information is SSI pursuant to TSA's
implementing regulations "because it is used by a passenger
screening system and/or concerns screening procedures, including
selection criteria and any comments, instructions, and
implementing guidance pertaining thereto." Blair Decl., ECF No.
9-4 ¶ 12 (citing 49 C.F.R. §§ 1520.5(b)(9)(i) and (ii)).

Similarly, with regard to the redactions to the 22 pages
withheld in part, TSA provided a detailed description of the
withheld material. In summary, it consists of some of the same
information withheld in the fully withheld documents plus
additional internal guidance for responding to Mr. Magassa's
redress petition and internal analyses. Again, the description
fits squarely within the scope of Section 114(r) because release
of such procedures, implementing regulations, and the specified
information would "be detrimental to the security of
transportation." 49 U.S.C. § 114(r)(C). Furthermore, the
information is SSI pursuant to TSA's implementing regulations
"because it is used by a passenger screening system." Blair
Decl., ECF No. 9-4 ¶ 12 (citing 49 C.F.R. §§ 1520.5(b)(9)(ii)).
TSA has employed a categorical approach to its redactions and
withholdings.

> A categorical approach to redactions or
> withholdings is permissible under FOIA when
> "the FOIA litigation process threatens to

reveal 'the very information the agency hopes to protect.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice,* 746 F.3d 1082, 1088 (D.C. Cir. 2014) ("*CREW* ") (quoting *ACLU v. CIA,* 710 F.3d 422, 432 (D.C. Cir. 2013)). The government may justify its withholdings and redactions "category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied." *Id.* (quoting *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C. Cir. 1994)). The range of circumstances included in the category must "characteristically support [ ] an inference that the statutory requirements for exemption are satisfied." *Id.* at 1088-89 (quoting *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 893 (D.C. Cir. 1995)).

*Prison Legal News v. Samuels*, 787 F.3d 1142, 1149-50 (D.C. Cir. 2015).

Here, the two categories described in the Blair Declaration support the application of Exemption 3 for the reasons explained *supra*. Furthermore, the Blair Declaration attests that "[t]he redacted and withheld information cannot be described with more particularity than the descriptions provided [] without revealing SSI." Blair Decl., ECF No. 9-4 ¶ 12 n.3. This fits squarely within the permissible reasons for using a categorial approach. *See CREW*, 746 F.3d at 1088.

Mr. Magassa's second argument is that to the extent TSA elaborated on why the release of the information would be detrimental to transportation security, its rationale is without

merit as applied to him. Pl.'s Opp'n, ECF No. 10 at 12-14.

However, the implementing regulations define security screening

procedures, as well as information and sources of information

used by a passenger or property screening program or system, as

SSI under 49 C.F.R. §§ 1520.5(b)(9)(i) and (ii). Even though the

information is about Mr. Magassa himself, as the government

points out, "SSI regulation sets out in detail those individuals

who may and who may not access SSI," and Mr. Magassa does not

explain why he is entitled to that information. Def.'s Reply,

ECF No. 14 at 8. The cases Mr. Magassa cites in other districts

in support of his argument do not address the narrow question of

SSI in this context, but rather focus on constitutional

challenges, unlike the case at hand. *See* Pl.'s Opp'n, ECF No. 10

at 13-14. As explained *supra*, the Court's role in the present

context is limited to determining "whether the material

withheld, as described by TSA, fits within the scope of Section

114(r)." *Skurow*, 892 F. Supp. 2d at 330-31.

### 2. TSA Properly Issued A "*Glomar* Response" Subject To Exemption 3

TSA issued a Glomar response "with respect to its searches

of certain locations that principally contain information

bearing on whether an individual's name appears on a watch list,

and any potentially responsive documents that might have been

returned by such searches . . .." Def.'s MSJ, ECF No. 9-2, ECF

No. 9-2 at 26. TSA argues that the results of searches in particular places cannot be publicly disclosed, and the *Glomar* response provided to Plaintiff was appropriate, because "acknowledging the existence or nonexistence of records regarding Plaintiff in these locations would reveal whether he was or was not on a watch list utilized by TSA for passenger pre-board screening." *Id.* at 26; Def.'s Reply, ECF No. 15 at 10. Mr. Magassa argues that "[TSA's] *Glomar* response is not applicable here, because many of the referenced documents have already been produced in other contexts." Pl.'s XMSJ, ECF No. 11-2 at 20. TSA replies that "[t]his argument is misplaced, as the purported documents which TSA previously confirmed existed to [Mr. Magassa] pertain to his aviation worker credential, and, as noted above, TSA did not search for such documents because they were outside of the scope of Plaintiff's request." Def.'s Reply, ECF No. 15 at 11.

A *Glomar* response is appropriate "only when confirming or denying the existence of records would itself 'cause harm cognizable under a FOIA exception.'" *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). "When addressing an agency's *Glomar* response, courts must accord 'substantial weight' to agency determinations." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 89 (D.D.C. 2016) (citing *Gardels v. CIA*, 689

F.2d 1100, 1104 (D.C. Cir. 1982)). The agency must "tether its refusal to respond to one of the nine FOIA Exemptions." *Montgomery v. IRS*, No. 17-918, 2019 WL 2930038, at *2 (D.D.C. July 8, 2019) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105).

"To overcome a *Glomar* response, the plaintiff[s] can either challenge the agency's position that disclosing the existence of a record will cause harm under the FOIA exemption asserted by the agency, or the plaintiff[s] can show that the agency has 'officially acknowledged' the existence of records that are the subject of the request." *James Madison Project*, 320 F. Supp. 3d at 148.

Mr. Magassa selected the first route to challenge the *Glomar* response, asserting that "many of the referenced documents have already been produced in other contexts." Pl.'s XMSJ, ECF No. 11-2 at 20; *see also* Compl., ECF No. 1 ¶ 15 ("[U]ndersigned counsel previously received numerous TSA documents through other administrative avenues that were not provided in this response, including but not limited to the determination that Mr. Magassa does not meet the eligibility requirements to hold airport-approved and/or airport-issued media"). However, and as TSA argues, Mr. Magassa's argument is

misplaced because the "purported" documents TSA previously
confirmed existed did not pertain to the subject of the *Glomar*
response – specifically that TSA cannot confirm or deny whether
Mr. Magassa is on a watch list, but they pertain to Mr.
Magassa's aviation worker credential and are therefore outside
the scope of the FOIA request at issue. ECF No. 14 at 11. Mr.
Magassa does not meaningfully respond to TSA's argument, but
merely reiterates his opening arguments. *See* Pl.'s Reply, ECF
No. 18 at 10.

Here, TSA argues that FOIA Exemption 3 applies to TSA's
*Glomar* response based on 49 U.S.C. § 114(r) and the implementing
regulations at 49 C.F.R. § 1520.5(b)(9)(ii). The Court concludes
that the TSA's *Glomar* response to plaintiff's FOIA request was
entirely proper and squarely within the realm of its authority.
*See Tooley,* 2006 WL 3783142, at *20 (finding that *Glomar*
response to request regarding a person's presence on TSA watch
lists was entirely proper under Section 114(r) where the TSA
explained that if the TSA "were to confirm in one case that a
particular individual was not on a watch list, but was
constrained in another case merely to refuse to confirm or deny
whether a second individual was on a watch list, the
accumulation of these answers over time would tend to
reveal SSI."); *see also Gordon v. FBI,* 388 F. Supp. 2d 1028,
1037 (N.D. Cal. 2005) ("Requiring the government to reveal

25

whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch lists by determining in advance which of their members may be questioned."). Accordingly, the Court concludes that TSA properly responded to Mr. Magassa's request for information about whether his name appeared on a watch list by refusing to confirm or deny that information pursuant to FOIA Exemption 3.

For these reasons, the Court **GRANTS** TSA's Motion for Summary Judgment as to Exemption 3. The Court **DENIES** Mr. Magassa's request for injunctive relief by way of a Court Order enjoining TSA from withholding any and all non-exempt records, *see* Pl.'s XMSJ, ECF No. 11-2 at 14; and **DENIES** Mr. Magassa's request for a declaration that he is entitled to disclosure of the records he requests, *see* id. at 17.

### 3. TSA Properly Withheld Information Pursuant To Exemption 6

TSA argues that its Exemption 6 withholdings of the names of individuals involved in processing Plaintiff's redress inquiry, and the name of a U.S. Customs and Border Patrol ("CBP") agent, are appropriate because "the privacy interests in this information was [sic] substantial and, considering the sensitive work TSA redress employees and CBP officers conduct related to, respectively, inquiries by individuals who allege travel-related difficulties and seek removal from watchlists,

26

and the enforcement of federal laws, that [sic] the release of such information—tied directly to TSA and CBP employees—could subject them to harassment and retaliation." Def.'s MSJ, ECF No. 9-2 at 28. Mr. Magassa responds that government employees have no legitimate privacy right to the redaction of their names. *See* Pl.'s XMSJ, ECF No. 11-2 at 16.

Exemption 6 exempts from disclosure "personnel and medical files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court must first determine whether the records at issues are "personnel, medical, or similar files," and then determine "whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Smith v. Central Intelligence Agency*, 246 F. Supp. 3d 117, 128 (D.D.C. 2017) *(*quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). "The Supreme Court has stated that the term 'similar files' is to be construed broadly and includes any 'disclosure of information which applies to a particular individual.'" *Id.* (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982)). "[U]nless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant

public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).

Here, the Court agrees with TSA that there are privacy interests involved for the employees whose names have been withheld, particularly given the nature of the underlying material. Against this privacy interest, the Court is unable to identify any public interest in the disclosure of identifying information. As TSA argues, "the release of these individuals' names and identifying information would do nothing to shed light on the operations and activities of the federal government." Def.'s MSJ, ECF No. 9-2 at 23. Mr. Magassa does not engage with TSA's detailed argument, or with the substantial caselaw TSA presents in support, instead only stating briefly that government employees have no legitimate privacy right to redaction of their names and citing a decades old case from a different District. *See* Pl.'s XMSJ, ECF No. 11-2 at 16. The Court concludes that TSA validly withheld names under Exemption 6. Accordingly, TSA's Motion for Summary Judgment as to the information withheld pursuant to FOIA Exemption 6 is **GRANTED.**

### D.  **TSA Has Satisfied Its Segregability Obligations**

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable,

nonexempt portions of the requested record(s)." *Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1167 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released*."* *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted). However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007).

With regard to the redactions to the 22 pages withheld in part and the 182 pages withheld in full pursuant to Exemption 3, the Blair Declaration attests that "I have determined that all of the redacted information described above is in fact SSI under 49 C.F.R. §§ 1520.5(b)(9)(i) and/or (ii)." Blair Decl., ECF No. 9-4 ¶ 13. The Blair Declaration further explains "that the SSI

Program procedures that call for the public release of as much information as possible without compromising transportation security and require redaction of the smallest possible portion of the record necessary to protect SSI were followed and that the redactions were necessary to protect SSI." *Id.* ¶ 10.

With regard to the 3 pages of documents withheld in part pursuant to Exemption 6, the Miller Declaration attests that "I have also evaluated the three (3) pages of responsive records withheld in part pursuant to Exemption 6. Those redactions cover names of individuals that I have determined were properly redacted in whole, as release of any part of those names could result in the privacy harms identified above." Miller Decl. ECF No. 9-3 ¶ 44.

Mr. Magassa asserts generally that TSA's "Declarations are insufficient, because they do not 'show with reasonable specificity why the documents cannot be further segregated.'" XMSJ, ECF No. 11-2 at 16 (quoting *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 90-91 (D.D.C 2003)); Pl.'s reply, ECF No. 18 at 9. He further contends that TSA's explanations fail to explain "in detail which portions of the documents are disclosable and which are all allegedly exempt." XMSJ, ECF No. 11-2 at 17. The Court disagrees and concludes that TSA has satisfied its burden regarding segregable information.

As an initial matter, Mr. Magassa has failed to point to any "quantum of evidence" to overcome the presumption that TSA complied with its obligation to disclose reasonably segregable material. *Sussman* 494 F. 3d at 1117. And rather than identifying any specific problems with TSA's declarations, Mr. Magassa simply points to the applicable legal standard. With regard to the Exemption 3 withholdings, the Blair Declaration explains in detail why the redacted and withheld information is SSI and states that, consistent with its SSI Program procedures, additional information could not be released without harming transportation security. With regard to the Exemption 6 redactions, the Miller Declaration attests that the only redactions made pursuant to Exemption 6 were the names of individuals. Based on these explanations and Mr. Magassa's failure to point to any quantum of evidence, the Court concludes that TSA has satisfied its segregability obligations. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2007) (quoting *Mead Data Cent.*, 566 F.2d at 251) (The agency has "provide[d] [] relatively detailed justification[s], specifically identif[ying] the reasons why [] particular exemption[s] [are] relevant [] with the particular part[s] of [] withheld document[s] to which they apply.").

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** TSA's Motion for Summary Judgment, *see* ECF No. 9; and **DENIES** Mr. Magassa's Motion for Summary Judgment, *see* ECF No. 11. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 31, 2022**